RAMON AND AUDRA V. FUENTES, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4980–84.    Filed October 29, 1985.

Ramon Fuentes, pro se.
*James D. Hill*, for the respondent.

OPINION

FEATHERSTON, *Judge*: Respondent determined a deficiency
in the amount of $1,881.67 in petitioners' Federal income tax
for 1979. The only issue for decision is whether petitioners are
entitled under section 167(a) and (m)[1] and related regulations
to use a half-year or averaging convention in determining
their depreciation deduction with respect to four railroad
boxcars acquired by petitioners and placed in service during
1979.

All the facts are stipulated.

Petitioners Ramon and Audra V. Fuentes resided in Wil-
liamstown, West Virginia, at the time the petition was filed.
They filed a joint Federal income tax return for 1979 with the
Internal Revenue Service Center, Memphis, Tennessee.

On October 31 and November 1, 1979, petitioners acquired
four general purpose railroad boxcars with a collective cost
basis of $173,364.68. Two of the boxcars were placed in service
on October 31, 1979, and two were placed in service on
November 1 of that year. Petitioners computed their deprecia-

---

[1]All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise
noted.

tion deduction using the double declining balance method and a 12-year useful life and claimed a deduction for the four boxcars collectively on their 1979 tax returns as follows:

DEPRECIATION SCHEDULE

| | Date acquired | Cost | Depreciation prior yrs. | Method | Life | | Depreciation 1979 |
|---|---|---|---|---|---|---|---|
| Four boxcars | 11/79 | $173,364.68 | 0 | DDB | 12 yrs. | 1/2 yr. | $14,113.72 |
| First-year bonus depreciation[2] | | | | | | | 4,000.00 |
| Total depreciation | | | | | | | 18,113.72 |

Petitioners received assistance in preparing their 1979 income tax return from James B. Dunn, a certified public accountant. Had Mr. Dunn been available to testify at trial, he would have stated that, in computing petitioners' depreciation deduction with respect to the four boxcars, he employed a method of depreciation consistently used by his accounting firm on petitioners' prior returns with respect to other depreciable assets, and on returns of the firm's other clients.

In the notice of deficiency, respondent redetermined petitioners' depreciation deduction for the boxcars as $4,704.58 (2 months' depreciation), stating that "your deduction is limited to the time the asset was placed in service during the taxable year."

Petitioners have not filed a brief but they have alleged in their petition that they are entitled to 6 months' (or a half-year's) depreciation as an "accounting convention," because (1) petitioners have "always deducted one-half years depreciation expense in the year the asset is acquired and * * * in the year the asset is disposed of"; (2) the "accounting convention used is an accepted method of determining depreciation expense"; and (3) the "method does not materially understate or overstate income for that year."

Section 167(a) provides for a reasonable allowance (depreciation) for the exhaustion, wear and tear of property used in a trade or business or held for the production of income. Section 1.167(a)–10(b), Income Tax Regs., provides that the period for depreciation of an asset generally begins when the asset is placed in service. The regulation further provides that, for the

[2]Respondent does not dispute petitioners' allowance for first-year depreciation under sec. 179 in the amount of $4,000.

year the asset is placed in service, a proportionate part of one year's depreciation is allowable, as a general rule, for that part of the first year during which the asset was in service. An exception to this general rule is the use of a half-year or averaging convention to compute the depreciation deduction for the first year an asset is placed in service. Use of a half-year or averaging convention is permitted only where: (1) An election is made pursuant to the regulations under section 167(m)(1)[3] to depreciate the asset under the Class Life Asset Depreciation Range System (CLADR) (sec. 1.167(a)–11, Income Tax Regs.) (half-year convention); or (2) assets in a multiple asset account are depreciated under an averaging convention (sec. 1.167(a)–10(b), Income Tax Regs.) (averaging convention).

## 1. Election of CLADR

Section 167(m)(1) provides that, in the case of a taxpayer who has so elected, the term "reasonable allowance" means, with respect to property for which a class life has been prescribed, an allowance based on the class life which reasonably reflects the anticipated useful life of that class of property to the industry or other group. The regulations under this section permit the use of a half-year or modified half-year convention[4] in computing a depreciation deduction for the first year the asset is placed in service, provided that the taxpayer properly elects to depreciate that asset under CLADR. Sec. 1.167(a)–11(c)(2), Income Tax Regs. Paragraph (f) of the

[3]Sec. 167(m)(1) provides as follows:

SEC. 167(m). CLASS LIVES.—

(1) IN GENERAL.—In the case of a taxpayer who has made an election under this subsection for the taxable year, the term "reasonable allowance" as used in subsection (a) means (with respect to property which is placed in service during the taxable year and which is included in any class for which a class life has been prescribed) only an allowance based on the class life prescribed by the Secretary which reasonably reflects the anticipated useful life of that class of property to the industry or other group. The allowance so prescribed may (under regulations prescribed by the Secretary) permit a variance from any class life by not more than 20 percent (rounded to the nearest half year) of such life.

Sec. 167(m) does not apply to recovery property, within the meaning of sec. 168, placed in service after Dec. 31, 1980. Sec. 167(m)(4).

[4]The half-year convention treats all assets as placed in service on the first day of the second half of the taxable year. Sec. 1.167(a)–11(c)(2)(iii), Income Tax Regs. The modified half-year convention treats all assets placed in service during the first half of the taxable year as placed in service on the first day of that year, and treats all assets placed in service during the second half of the taxable year as placed in service on the first day of the following taxable year. Sec. 1.167(a)–11(c)(2)(ii), Income Tax Regs.

foregoing regulation specifies the time and manner of the CLADR election and requires that the taxpayer furnish certain information with the election.[5] Paragraph (4) of section 1.167(a)–11(f), Income Tax Regs., further describes specific information that must be maintained in a taxpayer's books and records.

Nothing in petitioners' 1979 tax return indicates an intention to elect CLADR. Petitioners did not attach to their return a Form 4832 referred to in the flush language of section 1.167(a)–11(f)(2), Income Tax Regs., nor did they provide elsewhere on their return the information specified in section 1.167(a)–11(f)(2), Income Tax Regs. The fraction "½" which appears on their depreciation schedule may indicate petitioners' intent to employ a half-year convention for computing the depreciation deduction, but it in no way complies with the regulation for electing CLADR. Further, petitioners have not shown that they maintained the books and records prescribed by section 1.167(a)–11(f)(4), Income Tax Regs.

---

[5]Sec. 1.167(a)–11(f), Income Tax Regs., provides:

(f) *Election with respect to eligible property*—(1) *Time and manner of election*—(i) *In general.* An election to apply this section to eligible property shall be made with the income tax return filed for the taxable year in which the property is first placed in service * * * by the taxpayer. * * *

(2) *Information required.* A taxpayer who elects to apply this section must specify in the election:

(i) That the taxpayer makes such election and consents to, and agrees to apply, all the provisions of this section;

(ii) The asset guideline class for each vintage account of the taxable year;

(iii) The first-year convention adopted by the taxpayer for the taxable year of election;

(iv) Whether the special 10 percent used property rule described in paragraph (b)(5)(iii) of this section has been applied to exclude used property from the election;

(v) Whether the taxpayer elects to apply the asset guideline class repair allowance described in paragraph (d)(2)(iii) of this section;

(vi) Whether the taxpayer elects for the taxable year to allocate the adjusted basis of a special basis vintage account in accordance with paragraph (d)(3)(vi) of this section;

(vii) Whether any eligible property for which the taxpayer was not required or permitted to make an election was excluded because of the special rules of paragraph (b)(5)(v) or (6), or paragraph (e)(3)(i) or (iv) of this section;

(viii) Whether any "section 38 property" was excluded under paragraph (b)(5)(iv) of this section from the election to apply this section;

\*    \*    \*    \*    \*    \*    \*

(x) Such other information as may reasonably be required.

The information required under this subparagraph may be provided in accordance with rules prescribed by the Commissioner for reasonable grouping of assets or accounts. Form 4832 is provided for making an election and for submission of the information required. An election may be made and the information submitted only in accordance with Form 4832. An election to apply this section will not be rendered invalid under this subparagraph so long as there is substantial compliance, in good faith, with the requirements of this subparagraph.

Furnishing the information required by section 1.167(a)–11(f)(2), Income Tax Regs., and maintaining the books and records prescribed by section 1.167(a)–11(f)(4), Income Tax Regs., are not merely technical considerations. When transactions extend over a number of years (as do depreciation accounts) and tax benefits have been obtained in the earlier years, it is necessary for the Internal Revenue Service to be able to trace the tax history of the transactions. Otherwise, the Internal Revenue Service would not have the information needed to assure reasonable compliance with the revenue laws.

We find that petitioners did not make a valid election to depreciate the boxcars under CLADR as prescribed by the regulations; and therefore, they are precluded from using a half-year convention to compute the depreciation deduction.[6]

## 2. Election of "Multiple Asset Account" Convention

In the case of a taxpayer who has not elected to depreciate his assets under CLADR, but who maintains a "multiple asset account," the amount of depreciation may be determined by using an assumed timing of additions to and retirements from the account, or averaging convention. Sec. 1.167(a)–10(b), Income Tax Regs. One such averaging convention assumes that additions to and retirements from the account occur uniformly throughout the year, and depreciation is computed on the average of the beginning and ending balances of the asset account for that year. Application of this particular averaging convention results in a depreciation deduction of one-half that allowed for an entire year, or 6 months' depreciation allowance, the same result as under the CLADR half-year convention. However, section 1.167(a)–10(b), Income Tax Regs., further requires:

An averaging convention, if used, must be consistently followed as to the account or accounts for which it is adopted, and must be applied to both additions and retirements. In any year in which an averaging convention substantially distorts the depreciation allowance for the taxable year, it may not be used.

---

[6]See *Caulkins v. Commissioner*, T.C. Memo. 1984–504; *Regan v. Commissioner*, T.C. Memo. 1982–733.

Respondent argues initially that petitioners' depreciation account, consisting of four railroad boxcars purchased in 1979, does not constitute a multiple asset account within the meaning of the regulations. A multiple asset account consists of two or more depreciable assets grouped together in a variety of ways. One such multiple asset account, a "group account," combines assets which are similar in kind and have approximately the same useful lives. Sec. 1.167(a)-7(a), Income Tax Regs. Although petitioners did not label their account as such, we think petitioners' grouping of four railroad boxcars acquired and placed in service in the same year qualifies as a multiple asset account of the "group account" type.

Respondent further contends that use of an averaging convention in the instant case results in a material distortion of depreciation. Section 1.167(a)-10(b), Income Tax Regs., specifically proscribes the use of an averaging convention when large and unusual acquisitions would have the effect of substantially distorting the depreciation allowance for the year.[7] The objective of the regulation on multiple asset accounts is to simplify depreciation accounting where multiple assets are acquired or disposed of during the taxable year. The simplification results not solely from the combination of multiple assets in one account (see sec. 1.167(a)-7(a), Income Tax Regs.), but from the consistent treatment of multiple transactions under one chosen averaging assumption. The purpose underlying the regulation is best served where, unlike the present case, additions and retirements affecting a multiple asset account are made at various times over a taxable year.[8]

While petitioners urge that their use of a depreciation convention does not materially understate or overstate their 1979 income, the foregoing regulation refers not to a distortion of income, but to a substantial distortion of the annual depreciation allowance. Thus, the appropriate measure of depreciation distortion requires a comparison of the depreciation claimed for the asset account computed in accordance with the averaging convention, and the depreciation deduction

[7] Caulkins v. Commissioner, supra.

[8] Helfand v. Commissioner, T.C. Memo. 1984-102.

otherwise allowable without reference to such convention.[9]

Petitioners computed their depreciation deduction for the four boxcars under the double declining balance method using a half-year or averaging convention resulting in 6 months' depreciation allowance for 1979 in the amount of $14,113.72. Petitioners, having placed the assets in service on October 31 and November 1 of that year, would be entitled to 2 months' depreciation for 1979, or $4,704.58, if no convention were employed. A comparison of these figures demonstrates that the depreciation convention used by petitioners resulted in substantial distortion of their depreciation allowance for the four railroad boxcars for 1979.

To reflect the foregoing,

*Decision will be entered for the respondent.*

[9]*Helfand v. Commissioner, supra.*